```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                               :
BRIDGETON 396 BROADWAY FEE LLC,                                :
                                                               :
                                      Petitioner,              :
                                                               :
       -against-                                               :
                                                               :
ANTHONY T. RINALDI LLC d/b/a                                   :
THE RINALDI GROUP.                                             :
                                                               :
                                      Respondent.              :
                                                               :
-------------------------------------------------------------- X
```

**ORDER GRANTING MOTION TO DISMISS, DENYING MOTION TO ENJOIN ARBITRATION, AND DENYING MOTION FOR SANCTIONS**

1:20-cv-02052 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

After Anthony T. Rinaldi, LLC d/b/a The Rinaldi Group ("Rinaldi" or "Respondent") commenced arbitration proceedings and an arbitrator ruled that certain disputes were subject to arbitration, Bridgeton 396 Broadway Fee LLC ("Bridgeton" or "Petitioner") filed this petition and moved to enjoin arbitration. Respondent moved to dismiss and for sanctions. I hold that the parties' agreement empowered the arbitrator to decide whether issues between the parties were subject to their arbitration agreement. Accordingly, Petitioner's motion to enjoin arbitration is denied; Respondent's motion to dismiss the complaint is granted; and Respondent's motion for sanctions is denied.

## BACKGROUND

Bridgeton, the owner of a building in Lower Manhattan, hired Rinaldi to renovate and convert the building into a hotel. In conjunction with the project, the parties entered into a Standard Form of AIA Agreement Between Owner and Construction Manager as Constructor (the "Contract") on August 12, 2016. Declaration of Chris Georgoulis ("Georgoulis Decl.") Ex.

1, ECF No. 8-1.[1] The agreement provided that disputes first should be mediated and, if mediation were not successful, to submit their dispute to arbitration. See Agreement, § 9.2; Section 15.3 of AIA Document A201-2007, referenced in the arbitration provision, §15.3. The arbitration clause provided:

> For any Claim subject to, but not resolved by mediation pursuant to Section 15.3 of AIA Document A201-2007,[2] the method of binding dispute resolution shall be ... [a]rbitration pursuant to Section 15.4 of AIA Document A201-2007. Dispute resolution shall be managed through the American Arbitration Association, and not litigated in a court of competent jurisdiction, namely New York State court, as further described in the AIA A201-2007 § 15.4 ARBITRATION.

*Id.* at 17. Section 15.4 of AIA Document A201-2007 provides that arbitration "shall be administered by the American Arbitration Association" and that "[t]here shall be a single arbiter (the 'Arbiter'), who shall be empowered to hear and decide all disputes subject to arbitration pursuant to the terms hereof, and shall also be empowered to determine whether a dispute is so subject." *Id.* at 51-52. This last clause, empowering the arbitrator to decide if a dispute was subject to arbitration, is implicated in the motions before me. The agreement provided that the Federal Arbitration Act ("FAA") was to be the governing law. *Id.* at 46.

The Agreement's Disputes provisions, Article 15, provided an Initial Dispute Resolution Procedure (§15.2), even before mediation. If Rinaldi's Project Manager and Bridgeton's representative were unable to settle the dispute in two meetings (or an extended discussion if agreed to), an "officer designated" by both parties was to be appointed to settle the dispute ("if possible", §15.2.2), with the right of "Owner" or "Construction Manager" to declare

---

[1] On a motion to dismiss, "a court may . . . consider documents attached to the [petition], statements or documents incorporated into the [petition] by reference, matters of which judicial notice may be taken, public records, and documents that the [petitioner] either possessed or knew about, and relied upon, in bringing the suit." *Int'l Engineering & Constr. S.A. v. Baker Hughes*, 399 F. Supp. 3d 194, 198-99 (S.D.N.Y. 2019).

[2] Section 15.3 of AIA Document A201-2007, referenced in the arbitration provision, provides that "[c]laims, disputes, or other matters in controversy arising out of or related to the Contract except those waived" in provisions not relevant here "shall be subject to mediation as a condition precedent to binding dispute resolution." Georgoulis Decl." Ex. 1, ECF No. 8-1, at 51.

2

"impasse" at any time. The next step would be mediation (§15.3) and then binding arbitration (§15.4).

In 2018, approximately two years into the project, the parties amended the Initial Disputes Resolution Procedure (Agreement, amend. 3) of their agreement to appoint an agreed Initial Decision Maker to settle "disputed change orders" after the initial two rounds of negotiations between the Contractor's Project Manager and the Owner's Representative. Instead of extended discussion until one side or the other declared "impasse", the ruling of the Initial Decision Maker under the Dispute Resolution Procedure and "under this Amendment 3" was to be "final." The relevant text of Amendment 3 follows:

> Disputed change orders, if any, will be referred to the Initial Decision Maker, Ali Mohamedi. Payments for disputed Change Orders will not be made with a Reservation of Rights. Parties will provide a best faith effort to negotiate and settle any and all remaining Change Orders. In the event that parties cannot reach agreement, the Initial Decision Maker's ruling shall be final under the Dispute Resolution Procedure under this Amendment 3.

Georgoulis Decl. Ex. 5, ECF No. 8-5.

In 2019, a dispute arose between Rinaldi and Bridgeton. Rinaldi alleges that Bridgeton ceased payments, and filed a claim for a lien of $3,111,727, inclusive of claims from listed change orders totaling $722,870.52. Third Declaration of Scott Baron ("Third Baron Decl.") Ex. H at 1, 4, ECF No. 33-1. Although it is not clear what was submitted to Mr. Mohamedi, the Initial Decision Maker under the agreement, it is clear that before he decided the disputes, Rinaldi demanded arbitration, filing such on August 2, 2019, with the American Arbitration Association ("AAA"). Rinaldi named Bridgeton as respondent and described the nature of the dispute as "Contract balance due. Improper termination." Georgoulis Decl. Ex. 18, ECF No. 8-18. Robert MacPherson duly was appointed Arbitrator and convened the proceedings. Bridgeton answered on October 21, 2019, denying Rinaldi's claim, asserting a

counterclaim, and not filing any jurisdictional objections. Declaration of Scott Baron, June 3, 2020 ("First Baron Decl.") Ex. B, ECF No. 25-2.

Subsequently, Bridgeton sought an order from the Arbitrator to exclude that part of Rinaldi's claim relating to the change orders. Bridgeton argued that under Amendment 3, Mr. Mohamedi, not the Arbitrator, was empowered to resolve the change order disputes. Georgoulis Decl. Ex. 20 at 3, ECF No. 8-20. Arbitrator MacPherson denied Bridgeton's motion, Georgoulis Decl. Ex. 19, ECF No. 8-19, and ruled that Mr. Mohamedi's role was more as a facilitator of change order negotiations, not as an issuer of final rulings binding on the parties. *Id.* at 1. Arbitrator MacPherson held that only awards of the Arbitrator were binding and conclusive on the parties, and that change order disputes were included in his ruling. *Id.*

In April 2020, Bridgeton moved to disqualify Arbitrator MacPherson, asserting that Arbiter MacPherson's designation as the "single member of Dispute Resolution Board" in another matter involving Rinaldi represented a conflict of interest which should have been disclosed previously. Georgoulis Decl. Ex. 22, ECF No. 8-24. This caused Arbitrator MacPherson to recuse himself. Second Georgoulis Declaration ("Second Georgoulis Decl.") Ex. 23, ECF No. 28-8. Following the appointment of Thomas Rossi as the new arbitrator, Bridgeton moved for reconsideration of Arbitrator MacPherson's ruling on three separate occasions, but the Director of ADR Services at the AAA, Mia Levi, denied each request. First Baron Decl. Ex. E, ECF No. 21-5; Third Baron Decl. Ex. I-K, ECF No. 33-3-5.

Bridgeton filed its lawsuit in this court on March 6, 2020, and its, and Rinaldi's motions followed. The arbitration proceeding was stayed pending the outcome of this lawsuit.

## DISCUSSION

**I.   The Question of Arbitrability of Change Orders was Given to the Arbitrator**

4

"[A] claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008). "To survive a motion to dismiss [for failure to state a claim], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In deciding motions to stay or compel arbitration, courts apply a standard similar to that applicable for a motion for summary judgment," "consider[ing] all relevant, admissible evidence submitted by the parties and draw[ing] all reasonable inferences in favor of the non-moving party."*Boroditskiy v. European Specialties LLC*, 314 F. Supp. 3d 487, 492 (S.D.N.Y. 2018) (internal quotation marks omitted).

"[I]n cases where a party disputes whether it is bound to an arbitration agreement, the issue of arbitrability is for the Court in the first instance." *Id.* at 493 (internal quotation marks omitted). Furthermore, "[u]nder the FAA, threshold questions of arbitrability presumptively should be resolved by the court and not referred to the arbitrator." *Worthington v. JetSmarter, Inc.*, No. 18 CIV. 12113 (KPF), 2019 WL 4933635, at *6 (S.D.N.Y. Oct. 7, 2019). However, "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).

This case falls in the latter category. There is no dispute that Bridgeton was bound by the Contract or that the Contract delegated to the Arbitrator the power to determine whether a dispute is subject to arbitration. *See* Georgoulis Decl. Ex. 1, ECF No. 8-1, at 51-52

(Arbitrator "shall be empowered to hear and decide all disputes subject to arbitration pursuant to the terms hereof, *and shall also be empowered to determine whether a dispute is so subject.*" (emphasis added)). In this situation, "a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein*, 139 S. Ct. at 529. This is the end of the inquiry for this Court. *See, e.g.*, *Worthington v. JetSmarter, Inc.*, 2019 WL 4933635, at *6-7 (S.D.N.Y. Oct. 7, 2019). Indeed, the parties adopted the proposition that this arbitrator had the power under this contract to decide arbitrability until Bridgeton suffered an adverse ruling. This Court does not serve as an appellate court to review interim rulings of an arbitrator.

## II. Sanctions Will Not Be Imposed

Respondent also moves for sanctions in the form of attorneys' fees and costs, arguing the petition was frivolous in light of the Contract language and applicable law. When submitting a pleading or motion, "an attorney . . . certifies that to the best of the [attorney]'s knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). "[T]he court may impose an appropriate sanction on any attorney, law firm, or party" that violates Rule 11(b). Fed. R. Civ. P. 11(c)(1).

"A pleading, motion, or paper violates Rule 11 if it is frivolous, legally unreasonable, or factually without foundation, even though not signed in subjective bad faith." *Wechsler v. Hunt Health Sys., Ltd.*, 216 F. Supp. 2d 347, 356 (S.D.N.Y. 2002). I hold that Petitioner's filings in this case do not rise to a level that merits sanctions. Petitioner's theories were grounded in an incorrect understanding of the effect of Amendment 3 but nonetheless relied

on the facts of the parties' contractual relationship. Petitioner also made arguments derived from established case law. Though I ultimately rejected Petitioner's arguments, sanctions are not appropriate simply because a party is incorrect. "Merely incorrect legal statements are not sanctionable under Rule 11(b)(2)." *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 391 (2d Cir. 2003).

## CONCLUSION

In conclusion, Petitioner's motion to enjoin arbitration, ECF No. 7, is denied; Respondent's motion to dismiss, ECF No. 19, is granted; and Respondent's motion for sanctions, ECF No. 23, is denied. The Clerk is directed to close the case.

SO ORDERED.

Dated: October 8, 2020
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

7